Sites *v.* Eldredge.

---

## JEANNIE M. SITES

*v.*

## CHARLES ELDREDGE.

1. A power of sale annexed to a devise of the fee to be exercised at the discretion of the devisee, and without designating any particular object for which it should be exercised, expires at the death of the devisee.

Sites *v.* Eldredge.

2. An infant party defendant to a suit in partition is, in the absence of fraud, as much bound by the decree made therein as an adult.

3. A will in the following words : "I give and bequeath to my wife Jeannie B. Eldredge all my real and personal estate, consisting of clothing, jewelry, money and all the instruments, desks, office appurtenances and other property of like nature now belonging to me and purchased prior to May 1, 1884, and now in the office of the firm of Sites and Harrison,"—*Held*, to pass title to all the testator's real estate.

Bill for specific performance.    Heard on bill, answer and written statement of admitted facts.    ·

*Mr. Wm. R. Barricklo*, for the complainant.

*Mr. Willard C. Fisk*, for the defendant.

PITNEY, V. C.

The defence in this cause is rested wholly upon an alleged defect, or, rather, two defects, in the complainant's chain of title. The chain of title submitted reaches back to one William Jewett, the elder, who died in 1874, and who, by his will, devised the lands in question to his son, William S. L. Jewett, in fee simple, and also gave to his executor a general power of sale, and appointed his son sole executor. He gave his wife the use of a house and grounds, other than those in question, and also an annuity of $500 a year. He also directed his son to make a further provision for her comfortable support, over and above the annuity, in these words :

"It is, however, my will and desire that my said wife may be comfortably provided for, and that my said son shall do all that natural love and affection should dictate or that she should reasonably require."

The annuity was declared to be not a charge on any of the lands except the house and grounds, above mentioned.    The widow and son are both dead.    The son died in 1876, intestate,

NOTE.—That infants are bound by a decree in partition, see *1 Dan. Ch. Pr.* *221; Freem. on Part.* §§ *457, 467; Reed* v. *Reed, 46 Hun 212; Zirkle* v. *McCue, 26 Gratt. 517.*—REP.

and without having exercised the power of sale, leaving three daughters and a widow.    In 1883, the elder of these three daughters, having attained her majority, instituted proceedings in this court for a partition of the lands in question, making her sisters, who were still infants, and her mother, parties to her bill.    Under those proceedings the land was sold and the proceeds divided between the three children and widow, the latter accepting a sum in gross.

The first objection to the title is, that this power of sale is still outstanding and may yet be executed at the instance and for the benefit of the children who were infants when the decree for sale in partition was made.

I do not think this objection has any strength whatever.    The gift of the power to the executor is, in this case, a mere addition to a devise in fee to the son.    At one time it was successfully contended that such a power was idle and nugatory and therefore void.    *Goodill* v. *Brigham, 1 Bos. & P. 192; Maundrell* v. *Maundrell, 7 Ves. 567, 583,* where Sir William Grant held that a widow could not be barred of her dower by the exercise of such a power appurtenant to a fee.    The power in such cases was held to be merged in the fee.    *1 Sugd. Pow. 105 et seq.*    This decision of Sir William Grant was reversed, on appeal, by Lord Eldon (*10 Ves. 246, 256*), on the ground that the creation of such a power of sale appurtenant to a fee was in common use by the great English conveyancers as a legitimate means of enabling the grantee to bar his wife's dower, and also of enabling a *feme covert* to convey by simpler and less expensive machinery than was required to pass a fee in the ordinary way.

In the case in hand the only beneficial use which could be made of the power was, to enable the son to convey, free of his own debts and of his wife's inchoate dower, in order to provide for his mother in accordance with the express direction and wish of the testator.    No other person but his mother could derive any direct benefit from its exercise.    It also enabled the son to convert real estate into personalty, and transmit it in that shape to his children, free of dower on the part of his wife.

Sites *v.* Eldredge.

From this view it follows, that the power was one inherently of a nature not to be exercised by any one but the grantee, and therefore not transmissible or to be exercised by an administrator *de bonis non* or other representative in succession.

The case does not fall within the terms of the statute authorizing sales by representatives in succession, but is clearly within the line of cases holding such representatives incapable of conveying. *Chambers* v. *Tulane, 1 Stock. 146; Naundorf* v. *Schumann, 14 Stew. Eq. 14.*

The language of the will in this case is as follows: " I authorize my executor to sell and convey at any time *he may deem proper and expedient.*" This language is too plain for argument.

It was left wholly discretionary with the son whether he would or would not cut off his wife's dower, or whether he would use the power to raise money for his mother.

But further, upon the facts as stated, and independent of the language importing special trust and confidence in the son, it seems to me the power ought to be decreed to have expired and to be lost by lapse of time and want of any object to keep it alive. It would be dangerous to give countenance to the idea that, in a case like this, an old power could be hunted up, revived and put in force in order to divest titles derived from the heirs of the devisee in fee simple. *Moores* v. *Moores, 12 Vr. 440;* and see *In re Cotton's Trusts, L. R. (19 Ch. Div.) 624,* where many cases are collected.

I should have thought it unnecessary to cite cases on this point were it not for one case in our reports, viz., *Scudder* v. *Stout, 2 Stock. 377,* where Chancellor Williamson upheld a conveyance made by trustees seventeen years after the power had accrued, on the ground that, although the trustees acted in bad faith, and their conduct was fraudulent, yet the purchasers from them acted in good faith and without notice of the bad faith of their grantors; and he gave the complainant in that suit relief against the trustees who made the sale and against the *cestuis que trustent* who received the proceeds of the sale. But it is plain that the learned chancellor was strongly influenced by the circumstance that the grantees had paid their money in good faith and

had been in possession under their title for fifteen years before
any suit was brought to disturb them, and that the sale was pro-
moted by the father of the complainant.

But further : here it seems to me that the two infant children
are as much bound by the partition proceedings as if they had
been adults.   They were regularly brought into court and
guardians appointed for them.   The title was adjudged to be in
them as tenants in common with their adult sister, and a proper
share of the proceeds of the sale paid to the guardian of each,
and they have each, since their majority, accepted from the
guardian the sum so awarded.   No court, under the circum-
stances, would appoint new trustees to execute the power of sale,
and this court would not permit the two children, who were
infants when the partition was made, to take any benefit from a
sale of the same premises by a new representative of their grand-
father, under this power.   The complainant in the partition suit
is equally estopped, for she conveyed to the devisee of the com-
plainant.   There are no other persons who can possibly derive
any benefit from the exercise of the power.

The next objection taken to the title arises under the will of
William W. Sites, the husband of complainant, who acquired
title to the premises in question by conveyance from Mary W.
Jewett, who purchased at the sale under the partition proceed-
ings.

The clause in the will of said Sites, which is the basis of the
objection, is as follows :

"I give and bequeath to my wife Jeannie M. Eldredge" [the complainant]
"all my real and personal estate, consisting of clothing, jewelry, money and
all the instruments, desks, office appurtenances and other property of like
nature now belonging to me and purchased prior to May 1, 1884, and now in
the office of the firm of Sites and Harrison."

The defendant argues that the ordinary force of the word
"real" in this clause is cut down and limited by the context so
as to make it include only the particular chattels enumerated ;
and, further, that those chattels are in their nature chattels real,
and he relies upon the line of cases collected and cited by Mr.

Jarman in his treatise on *Wills 716*, (*Rand. & Talc. ed. vol. 2 p. 315 et seq.*) An examination of those cases will show that in most of them the contest was over the force of the word "estate," without any preface of "real" or "personal," the question being whether, considering its "society," it was intended to include lands held in fee simple or not. In England, a large portion of the lands have always been held under long leases, and chattels real were a frequent subject of testamentary disposition. I find the question arose there in one case whether the word "real" should not be confined to chattels real. The case is *Marhant* v. *Twisden, Gilb. Eq. Rep. 30*, decided in 1712, and cited by Mr. Jarman (*p. 717*). A testator, after bequeathing several pecuniary legacies, proceeded thus: "All the rest and residue of my estate and chattels, real and personal, I give and devise to my wife" &c.; and it was held that the word "real" must be confined to chattels real. Mr. Jarman says of that case, that "no case had gone so far in restraining the word 'estate.' Nothing was more obvious than to consider the word 'real' as applying to 'estate' and 'personal' to 'chattels,' corresponding as they respectively do in local order; and such it is confidently apprehended would be the construction at this day." That Mr. Jarman's criticism is correct, abundantly appears by a consideration of the later cases cited by that learned author.

But I do not think that *Marhant* v. *Twisden*, even if still an authority, can have any bearing on the case in hand, for I do not find any chattels real among those enumerated in Sites's will.

Another case liable, momentarily, to be supposed to resemble that in hand is *Timewell* v. *Perkins, 2 Atk. 102*, decided in 1740 by Mr. Justice Fortescue, sitting at the rolls. The question arose on the will of John Hitchins, in these words:

"All those my freehold lands and hop-grounds with the messuages or tenements, barns &c. now in the tenure and occupation of the widow Leach, and all other the rest and residue and remainder of my estate, consisting in ready money, plate, jewels, leases, judgments, mortgages, &c., or in any other thing whatsoever or wheresoever, I give unto my dearly beloved Arabella Hitchins and her assigns forever."

And the question was, whether the residue of the real estate passed to Arabella under this disposition, and it was held that it did not, the judge remarking : " The word ' estate ' itself indeed may include as well real as personal ; yet when the testator has expressed himself by such words as are applicable to personal only, I cannot intend he meant the real estate."

In addition to this reason, founded on the words following and qualifying the word " estate" in that case, there is the further consideration not alluded to by the judge, that the testator preceded the gift of the residue by a specific devise of certain described lands to the same beneficiary, and no reason was apparent why he should pick out and devise specifically one particular parcel of freehold to the devisee, and then proceed in the same sentence to devise all the residue of the realty to the same person by general words. The maxim *inclusio unius exclusio alterius*, seems to me to apply. But I think it apparent, from the numerous later decisions cited further on by Mr. Jarman, that the English courts at this day would hold that the residue of the realty would have passed in that case, under the very strong words found in the latter part of the devise.

It is enough, for present purposes, to say that the case does not reach the one in hand.

I have carefully examined all the cases cited, and find among them no authority for restricting the force of the word " real " in Sites's will. In fact, except as to certain set phrases so long in use by the English conveyancers as to have acquired a technical meaning, precedents are of little value in interpreting wills. The modern tendency is to confine the attention to the meaning of the words as found in the will. In reading this will, I have not the least doubt that, by the words here used, the testator meant to give his wife all his real estate. Such is the natural meaning of the language, " I give and devise to my wife Jeannie M. Eldridge all my real and personal estate." And the words " consisting of " &c. which follow, are naturally confined to the words " personal estate," and were intended simply to specify what that personal estate consisted of. At a venture, I should suspect that the enumeration was made as in-

formation to his executor, that he claimed to own such property in severalty, as distinguished from other property which belonged to the firm, of which he appears to have been a member.

I will advise a decree for the complainant.