50 N.J. Super. 308 (1958)
142 A.2d 104
JEAN WEISS AND ROSE WEINER, EXECUTRICES UNDER THE LAST WILL OF JACOB J. GREENGRASS, DECEASED, ET AL., PLAINTIFFS-RESPONDENTS,
v.
REGINA WEISS RHEINSTEIN, ET AL., DEFENDANTS-RESPONDENTS, AND WILLIAM GREENGRASS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 19, 1958.
Decided June 3, 1958.
*310 Before Judges PRICE, HANEMAN and SCHETTINO.
Mr. David Kimmel appeared for plaintiffs-respondents (Messrs. Kimmel & Kimmel, attorneys).
Mr. John W. Hand argued the cause for defendants-respondents (Messrs. Evans, Hand and Evans, attorneys).
Mr. Saul M. Mann argued the cause for defendant-appellant.
PER CURIAM.
Appeal is from a final judgment of the Superior Court, Chancery Division, awarding the testator's entire interest in Victory Grove, Inc., to plaintiff as trustee for the benefit of defendants. Regina Weiss Rheinstein, testator's niece, and Richard Weiss, testator's nephew. Appellant, a brother of the testator who received 8% of the residue of the estate under the will, appeals.
*311 Plaintiffs took no position here or in the trial court in their present action except to request from the courts an interpretation of a provision of the will dated April 14, 1949 which reads as follows:
"I give, devise and bequeath to my sister, Jean Weiss, as Trustee, all my entire interest, consisting of ten (10) shares of stock, in the Victory Grove, a corporation which owns a certain orange grove in the State of Florida, in trust, as follows. * * *"
There is evidence of a very close and generous relationship between testator and his niece and nephew, the beneficiaries of the trust. They lived in different portions of the same house and testator was a widower with no children of his own.
At the time the will was drawn, and at the time of death, testator owned 22 1/2 shares of the corporation and not the ten shares which is set forth in the will. The testator died on October 7, 1956 and his will was admitted to probate on October 18, 1956. In 1945 three parties, one of whom was the testator, organized the corporation with an authorized capital of 50 shares of no par common stock, of which 30 shares were issued. Ten shares were issued immediately to each one of the three, so that each principal had a 33-1/3% interest in the corporation. In 1946, when differences arose among the three, testator and one of the others purchased the ten shares from the third party and then sold five shares to one Tess Hammer. The two remaining principal stockholders then surrendered their original ten shares and caused the corporation to issue to each, one stock certificate of 22 1/2 shares, thus increasing each, one's individual ownership in the corporation to 45% with Tess Hammer owning the remaining 10%.
If the trust is found to be limited to the ten shares, the remaining 12 1/2 shares would devolve by reason of the residuary clause. The plan of the will is as follows: Paragraph third, testator devises his home and its contents and personal belongings to his sister, Jean. Paragraph fourth, made a bequest of the stock in trust to his sister, Jean, for *312 the benefit of her children. Paragraphs fifth, sixth, seventh and ninth were bequests of $500 each to certain charitable institutions and organizations, and to each of two individuals. Paragraph eighth was a bequest of $1,000 to a charity. By Paragraph tenth, testator disposes of his entire residuary estate, as follows: 25% to his sister Jean, 25% to his sister Rose, 20% to his sister Sara, 10% to his sister Mary, 10% to his sister Hattie, 8% to his brother William, 2% to his brother Michael.
Appellant raised in his answer the proposition that if the 22 1/2 shares were given in trust under paragraph fourth, then the residuary estate, after the payment of state and federal inheritance taxes, would have very little left for distribution, and that that factor would do violence to testator's intent to benefit the residuary legatees. However, he does not raise this contention on appeal.
Appellant contends that the specification of "ten (10) shares" are words of limitation, and that the words "consisting of" are not only descriptive but restrictive of the prior phrase, "all my entire interest." To substantiate this reasoning, appellant cites the following general propositions:
Where there is a clear enumeration of particulars purporting to be designed as qualifications or restrictions of a preceding general description, the words of general bequest must yield. In re Armour's Estate, 11 N.J. 257 (1953); Baker v. Soltau, 94 N.J. Eq. 544, 546 (E. & A. 1923); Griscom v. Evens, 40 N.J.L. 402, 413 (Sup. Ct. 1878), affirmed 42 N.J.L. 579 (E. & A. 1880).
Where two clauses of the will are irreconcilable so that they cannot stand together, the last clause shall prevail, the last words being considered as a subsequent and final intention. Rogers v. Rogers, 49 N.J. Eq. 98, 100 (Ch. 1891); Hendershot v. Shields, 42 N.J. Eq. 317, 318 (Ch. 1886).
Appellant leans heavily upon the authority of Baker v. Soltau, supra, wherein the clause of general bequest was for a "one-half undivided interest in the firm of Soltau & Baker, * * * consisting store fixtures, produce and supplies on *313 hand, horse and wagon * * *." Suit was brought by a legatee for a one-half interest in a bank account not in the enumerated list of articles. The Court of Errors and Appeals there affirmed the Court of Chancery which held that the word "consisting" and the enumeration following that word were descriptive and indeed restrictive of the interest bequeathed.
The Baker case is distinguishable from the case at bar wherein the words of general bequest are all-inclusive, and where the purportedly restrictive clause is neither descriptive of the import of the clause of general bequest nor indeed descriptive of the facts since the testator owned 22 1/2 shares of stock and not ten. Finally, the conclusion must follow necessarily that the clause in question is not a clear enumeration on its face purporting to be a restriction. The trial court, being unable to determine the clear intent of the testator from the four corners of the will, admitted extrinsic evidence as an aid in interpreting and construing the will in the face of this latent ambiguity. In re Armour's Estate, 11 N.J. 257, 279 (1953); 5 Clapp, N.J. Practice, p. 276, § 114.
The words "consisting of ten (10) shares of stock" are merely descriptive of what testator believed he then owned and his intention should be garnered from the phrase "all my entire interest" in Victory Grove, Inc. Additionally, we note that a comma separates the words "all my entire interest" and the word "consisting," and another comma follows the entire phrase "consisting of ten (10) shares of stock." We feel that these words are appositives of the words "all my entire interest" and not limitations thereof. Warriner's Handbook of English, Book One, p. 402 (1948). In the light of the extrinsic facts, the so-called restrictive clause is anything but clear, and the conclusion from the plain meaning of the words is inescapable that the testator intended the clause merely as a description and not a restriction, which description as a matter of fact was erroneous. For example, in Griscom v. Evens, supra (42 N.J.L. at page 595), Chief Justice Beasley referred to an English case *314 which had similar words: "* * * in Whitfield v. Langdale, L.R., 1 Ch. Div. 76, a farm of one hundred and seventy-five acres was held to pass, although the tract devised was described as containing only eighty acres." Therefore the maxim "falsa demonstratio non nocet cum de corpore constat," which freely translated means a "false description does not vitiate, if there be sufficient certainty as to the object," aptly applies to the clause in question and the words of false description should be stricken. Tayler, The Law Glossary (1833).
This principle has long been recognized in New Jersey. Although the doctrine was not applied because the words as there construed fitted one thing, exactly, Mr. Justice Depue in the Griscom case stated (40 N.J.L. at page 413):
"* * * Indeed the rule may be said to be a general rule that, whenever the testator's intention to give the whole as an entirety, clearly appears from the language of the will, whether such intention is expressed by a designation, by a name, or by abuttals, or other descriptive words, additional words of description which prove to be only partially true, will be rejected as a mistaken description. * * *
"But it is an erroneous application of this maxim to suppose that an enumeration of particulars in the description will, in all cases, be overruled by general language in the devise. On the contrary, where there is a clear enumeration of particulars, purporting on their face to be designed as qualifications or restrictions of a preceding general description, words of general devise must yield."
But the court said further (at pages 416-417):
"* * * The whole description applies to, and correctly describes that part of the testator's lands which had been conveyed to him by the heirs of his deceased wife, except the designation of quantity. A description by a statement of quantity is always regarded as the most unreliable of the methods of description. It may help to ascertain the premises intended, but will not control other and more certain means of description, and will readily be regarded as a false demonstration, when the premises intended are ascertained with convenient certainty by other descriptions." (Emphasis added) See also Sites v. Eldredge, 45 N.J. Eq. 632 (Ch. 1889); 5 Clapp, N.J. Practice, p. 274, § 114.
*315 Respondents cite the case of Hertford v. Harned, 185 Ind. 213, 113 N.E. 727 (Sup. Ct. 1916), which is apropos of the facts in the case at bar. There the will provided:
"I hereby give and bequeath to Mrs. Irma Hertford my stock in the Washington National Bank amounting to one thousand (1,000) dollars * * *."
It appeared that when the will was made testatrix owned 20 shares of stock of a par value of $2,000, and the question was whether the legatee should get all of the stock or only half. The facts showed that the original stock certificate was for ten shares at a par value of $1,000 but that a conversion had taken place so that testatrix had received the new certificate for 20 shares five years prior to the execution of the will.
The Indiana court held in essence with the New Jersey rule (113 N.E. at page 729):
"* * * To remove such latent ambiguity the court may properly inquire into every other material extrinsic fact to which the will certainly refers, and to the relation of the testator to such facts, to the end that the court may discover the purpose of the testator in the language actually used in the will."
Within the framework, considering the additional factors that the stock was represented by a single certificate and the legacy was specific, as are also to be found in the case at bar, the court concluded (113 N.E. at page 729):
"Errors in the description of a legacy or legatee will be disregarded where enough remains to show with reasonable certainty, the gift and the object intended.

* * * * * * * *
* * * We are of the opinion from the terms of the will, and the facts admitted as true, that the phrase `amounting to $1,000' was intended by testatrix to furnish an additional description of the bank stock owned by her, and not to limit the quantity of the gift to Mrs. Hertford; that such description is erroneous, and should be disregarded."
The basic rule which guides in the judicial interpretation of wills is set forth at length in the case of In re *316 Armour's Estate, supra, where Mr. Justice Heher says that the controlling consideration is the effect of the words as actually written although testamentary intent may be elucidated but not varied, enlarged or contradicted by extrinsic evidence. (11 N.J. at pages 278-279). In this vein it is difficult to conceive of a more absolute disposition than the general words of the bequest herein: "I give, devise and bequeath * * * all my entire interest, * * * in the * * * corporation * * * in trust * * *." (Emphasis added)
Thus, the finding of fact by the trial court as to the testator's intent should not be disturbed on appeal since it is supported by the evidence and is consistent with substantial justice. Spagnuolo v. Bonnet, 16 N.J. 546, 555 (1954).
At oral argument appellant for the first time made the point that the words "all my entire interest" could be interpreted to mean "all my entire interest in 10 shares of stock." Counsel for defendants-respondents stated that this suggestion had not been made either in the trial court or in the brief, and counsel for appellant conceded that to be so. We feel that this new and additional contention lacks merit and would stretch the inquiry as to what was the testator's intent to an unreasonable degree. Such a distorted grammatical change would do violence to the basic doctrine of testator's intent. In re Armour's Estate, supra. "Punctuation * * * may be considered in * * * interpretation" of a writing. Moore v. Magor Car Corp., 27 N.J. 82 (1958).
Affirmed.