DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY

### NOVEMBER TERM, 1880.

---

THOMAS EVENS, PLAINTIFF IN ERROR, v. DAVID D. GRIS-
COM, DEFENDANT IN ERROR.

1. Words descriptive of the object of the devise cannot be discarded as
   false demonstration, unless they are clearly repugnant to other more
   important descriptive phrases.
2. To justify the suppression of a descriptive phrase, by force of the rule
   of *falsa demonstratio,* such phrase must not only be out of exact har-
   mony with the other parts of the demonstration, but it must be unde-
   niably so, in some important respect, after putting a reasonable con-
   struction upon the descriptive context.
3. Devise of "all that my farm and plantation near Cropwell, conveyed
   to me by the heirs of my deceased wife, and where my son Thomas
   now resides, containing about eighty-five acres, more or less." The
   testator owned two parcels of land near Cropwell, the one a farm
   containing about seventy-two and sixty-two hundredths acres, which
   had been conveyed to him by the heirs of his deceased wife, and the
   other containing fourteen and seventy-three hundredths acres, which
   had been conveyed to him by one Abel Lippincott. These two parcels
   adjoined each other, and had been rented and cultivated together for
   many years. Thomas resided on the first-named parcel, but cultivated
   and used both. *Held*—That only those premises which had been con-
   veyed to the testator by the heirs of his deceased wife, passed under
   the devise.

579

In ejectment.   On error to the Supreme Court.   The facts fully appear, in the opinions.

For the plaintiff in error, *A. Browning* and *B. Gummere.*

For the defendant in error, *A. C. Scovel* and *F. Voorhees.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   This controversy relates to the meaning of the fourth clause of the last will of Thomas Evens, deceased.   The language of the devise is the following :   "*Fourth.* I give and devise to my three sons, Samuel B., William B. Evens and Jacob L. Evens, and to the survivor of them, in trust, all that my farm and plantation near Cropwell, conveyed to me by the heirs of my deceased wife,. and where my son, Thomas Evens, now resides, containing about eighty-five acres, more or less."

At the time of the date of this will, and when he died, the testator was the owner of a farm near Cropwell, which had been conveyed to him by the heirs of his deceased wife, and upon which his son, Thomas Evens, resided.   To this farm,. which contained about seventy-three acres, the testator had added a tract of fourteen acres, which had not come to him from the heirs of his deceased wife, and these tracts, thus connected, for a long period of time had been used by the testator, and had been called by him his " Cropwell farm." It is this fourteen-acre tract that is the subject of this ejectment, the plaintiff in the court below, and who, under the instruction of the court, obtained a verdict, claiming it by virtue of a purchase from those entitled under the residuary clause of the before-mentioned will, and the plaintiff in error resisting such claim, on the ground that it passed to him by virtue of the fourth clause of that instrument, which has just been recited.

The contention of the plaintiff in error is that, by this fourth testamentary clause, the whole of the Cropwell farm was devised to him.   If this is so, of course the fourteen

acres, being a part of that farm, are his property, and he is entitled to succeed in this suit. The argument in favor of this position is, that the entire Cropwell farm is embraced in the general description of "all that my farm and plantation near Cropwell," "where my son Thomas now resides," and that, therefore, the further description of it as being the lands conveyed to him by the heirs of his deceased wife, is to be rejected as a false demonstration. But the difficulty is, to see upon what principle these latter words are to be rejected. If left in, they are not incongruous with anything in the sentence. It is only by an arbitrary assumption that the testator has expressed a purpose of giving the entire Cropwell farm to this devisee, that the words in question are thrown out of joint with the context. If we accept the entire clause, and all its terms, then there is no jar or discord between its parts. If, when the language is, "I give all that my farm and plantation conveyed to me by the heirs of my deceased wife," we say that the testator meant to convey not only the tract so described, but also an alien tract of fourteen acres, of course it becomes manifest that a part of the terms used are to be thrust out of the sentence. But why this expulsion? The testator owned a farm conveyed to him by the heirs of his deceased wife; it was situated near Cropwell; it was resided on by his son Thomas; and when the will says, in the plainest terms, that it is all that farm and plantation which was devised, where is the inconsistency in the clause? There is an entire, definite thing, and he says he gives the whole of that thing. The expression, "all that my farm and plantation," was, at the option of testator, as applicable to the farm derived from the heirs of his wife as it was to that farm with the fourteen acres added. A case is therefore presented of a first description of the subject of the gift, which is at least so general as to be amenable, without incongruity, to a limitation by a subsequent restrictive description, and, under such conditions, I have not found a single instance, among the numerous decisions on this subject, in which such restrictive description has been eliminated. The rule results

from the principle of construction that every word in a will is to be retained, and a force given to it whenever such course is practicable. In Goodall's case, reported by Lord Coke, 5 *Rep.* 97, it is said, "The law will not reject any word if, by any reasonable construction, it may take effect." In the present case, the restrictive words, "conveyed to me by the heirs of my deceased wife," are not incongruous, except in the sense of being restrictive, with the previous description, contained in the words, "all that my farm and plantation near Cropwell." I see no more reason for mutilating this sentence, and rejecting the part called in question, than there is in almost every case in which a description of the subject of the gift is followed by a more specific definition. The opposite construction obtains when the first description is so precise or definite that it plainly appears that the subsequent description is out of unison with it, so that the two descriptions cannot be harmonized. For example—if, in this case, the testator had given to this devisee "all that his Cropwell farm," it is very plain that the subsequent descriptive limitation found in this clause could not be made to consist with such a description. The demonstration of the farm by its name would have been equivalent to saying, "I give the farm conveyed to me by the heirs of my deceased wife, and also the fourteen acres which I attached to such farm, to my son Thomas," and, consequently, a subsequent description, which embraced only the farm without the other tract, would be absolutely irreconcilable with such demonstration. In such a state of things, the latter description would be rejected as *falsa demonstratio*.

It is upon these distinctions that I think the decided cases have very uniformly proceeded. No case is more illustrative of the subject than that of *Goodtitle* v. *Southern*, 1 *M. & S.* 299. The terms of that devise were these: "All that my farm *called Trogues farm*, now in the occupation of A. C." It was shown that part of Trogues farm was not in the occupation of the tenant who was named, and the court rejected the description derived from occupancy as a false demonstra-

tion. This is a leading case on the topic under discussion, and is cited and much relied upon by the counsel of the plaintiff in error. But it is plainly inapplicable. Unlike the case in hand, the two descriptions could not stand together. The description of all the farm by name, incontestably designated the whole of such farm, so that the first description called for the entire thing, and the second description for only a part of such entire thing. The two descriptions were, therefore, irreconcilable, and the latter was properly rejected. If the farm in this reported case had not been designated by name, there is high authority for the doctrine that nothing but the part occupied by the designated tenant would have passed under such devise. Lord Cranworth, in the course of his remarks in the case of *Slingsby* v. *Grainger*, 7 *H. L. Cas.* 273, 282, comments upon this decision in this wise— he says: "I allude to the case of Goodtitle *v.* Southern, where the testator devised 'all that my farm called Trogues farm, now in the occupation of A. C.' It turned out that there were two closes of land constituting part of Trogues farm, which were not in the occupation of A. C., and the question was whether they passed; and the jury having found that they were part of Trogues farm, the court held that they passed, because that which was given was clearly the Trogues farm. There was no doubt that it was the Trogues farm which was described by the will. It was wrong to say that it was in the occupation of A. C., but the circumstance that the testator had made a mistake in supposing that the whole was in the occupation of A. C., did not vitiate the gift. But if it had been, 'I give all those lands at Trogues farm (if there was such a place), in the occupation of A. C.,' it seems to me quite clear that any portion of the land which was not in the occupation of A. C. would not have passed. The distinction is between those cases in which there has been a complete description of the thing given, and a subsequent misdescription as to some particular connected with it, and cases in which that which is subsequently connected with the description, is so connected as to form part of the description

of the thing given." It thus appears that, in the opinion of this eminent jurist, it was the designation of the tract of land devised, by its name, that alone prevented the first description from being cut down and diminished by the second description. That a devise of a tract of land described by a name which is applicable to the whole of it, will not, under ordinary circumstances, be affected by a subsequent description, which appears to be intended for a second description of the same tract, but which, in fact, covers only a part of it, is the well-settled rule which has been enforced in a multitude of decisions. Many of the authorities cited in the brief of the counsel of the plaintiff in error belong to this class. Such are *Chamberlaine* v. *Turner, Cro. Car.* 129 ; *Down* v. *Down,* 7 *Taunt.* 343 ; *Doe* v. *Earl of Jersey,* 1 *B. & Ald.* 550 ; *Doe.* v. *Galloway,* 5 *B. & Ad.* 43 ; *Ela* v. *Card,* 2 *N. H.* 175 ; *Crosby* v. *Bradburg,* 20 *Me.* 61 ; *Drew* v. *Drew,* 8 *Foster* 489. These are all cases in which there was a particular description, by name, of the property devised, and the rule on which they were decided is a very ancient one, for we find the doctrine thus laid down in Sheppard's Touchstone, as extracted from the Year Books : " If one," says the author, " grants all his lands in Dale, which he had of the gift of J. T., by this grant nothing will pass but that which he had of J. T. But if one grant all his lands in Dale, *called Hodge's,* which he had of the gift of J. T., by this grant all which is called Hodge's shall pass, albeit the grantor had it not of the gift of J. T." Inasmuch, therefore, as in the present case the land was not described by any name under which it was known, the decisions cited, of this class, have no proper application.

The residue of the cases thus cited rest on grounds that render them altogether irrelevant—with one exception, which will be noted in the sequel—to the present inquiry. Thus, in *Doe* v. *Cranstoun,* 7 *M. & Wels.* 1, the rule that has often been sanctioned was enforced, that when a testator devises certain lands in a certain place, and describes them as feehold land, and it turns out that he has no feehold lands in that place, but has leasehold lands, or *vice versa,* the lands

held by him will pass. Such cases furnish instances of obvious mistake, and have nothing to do with the question we are now considering. *Worthington* v. *Hylyer*, 4 *Mass.* 196, and *Cutler* v. *Tufts*, 3 *Pick.* 272, are cases of repugnant descriptions in conveyances which could not, by any possibility, be reconciled. *Marshall* v. *Hopkins*, 15 *East* 308; *Goodtitle* v. *Paul*, 2 *Burr.* 1089, and *Doe* v. *Carpenter*, 16 *Q. B.* 181, all rest upon peculiar circumstances, and are therefore not qualified to be exemplifications of any general principle. I cannot see that either of them is anywise in point.

The case of *Drew* v. *Drew*, 8 *Foster* 489, which is the excepted case above alluded to, is, at the first blush, more nearly in point, but, upon careful examination, will be found, with respect to the principle on which it rests, to be an authority favorable to the affirmance of the present judgment. The devise in this reported case was expressed in these words: " All my homestead farm in Dover, being the same whereon I now live, and the same that was devised to me by my honored father." It appeared that the testator had derived a part only of the homestead farm from his father. The court held the whole of it passed by force of this language. This result, I think, was clearly right. The land devised was substantially described by its name. It was the homestead farm, and that farm embraced both the tracts, though derived from different sources. The phraseology, in its several clauses, plainly denotes not limitation, but additional description, and this is emphatically the case with the expression that was contended to be restrictive. The phrase, " and the same that was devised to me by my deceased father," has nothing of the aspect of a limitation of the precedent descriptions. At all events, that this was the view of the court making the decision, is not left in doubt, for in the opinion we find an express declaration to that effect. Referring to this phrase, the opinion says: " If such a qualification had been so inserted in the form of a restriction and as the part of one connected description, as if it had been said, ' all my homestead farm, which was devised to me by my father,' it would limit the

part of the homestead to so much as was so devised, because, taking the two parts of the description together, it was not 'all my homestead,' but 'all which was devised by my father,' which was designed to be given." In other words, if the phrase in that testamentary clause had stood in the same collocation as do the similar phrases in the will now under consideration, the last description would have been considered to be restrictive of the antecedent descriptions. This case must be blindly read, if it is not perceived that it is an authority standing in direct opposition to the contention of the plaintiff in error.

As a case much in point, that of Pedley v. Dodds should not be passed without special notice. It is a modern case, to be found in *L. R.*, 2 *Eq. Cas.* 819. Some of the facts were singularly similar to those now under consideration. The testator had become the owner, by purchase, of certain tracts of land, which were described in the indenture to him as belonging to "Arkley Hall." These lands all lay in the parish of Ridge. At a subsequent date, the testator acquired other lands, some of which were situated in the parish of Shenley, and others in the parish of Barnet, and which lands adjoined the farm above mentioned, and were immediately added by the testator to such farm; and from that time forth, and for many years, the entire tract thus formed was used and rented together, and was known under the common name of "the Arkley Hall farm." This was the situation at the death of the testator. It will be perceived that such situation differs little, if in any respect, from the position of affairs in the present case. By his will, the testator devised all his feehold estates, consisting of "Arkley Hall farm, in the parish of Ridge, in the county," &c., unto trustees, &c. The question was whether the farm formed by the testator out of lands lying in part in the three parishes, passed under these words, or whether the devise was to be limited to the farm as it originally existed, before the above-mentioned additions had been made to it. It will be noted that, although the lands devised were designated by a name, still,

as such name had been in use with respect to two objects, such description was not so definite as to prevent a limitation, by subsequent terms, of its widest meaning.

In his judgment in this case, Sir J. Stuart, V. C., said: "Arkley Hall farm, in the parish of Ridge, was a farm known by that description previously to 1802, when the testator purchased it. It is properly described in the will. * * * The testator specifically devised his Arkley Hall farm, in the parish of Ridge, and it is contended that he made a mistake—that he did not mean Arkley Hall proper, but meant that farm not only in the parish of Ridge, but with the additions which he had made of land in the parish of Shenley. The Lord Chief Justice Erle, in *Webber* v. *Stanley*, 16 *C. B.* (*N. S.*) 752, said: 'As to the case where there is property in respect of which all the facts of the description are found to be true, so that the property exactly fits, the whole of that property, and nothing more, passes.' What the testator has given is Arkley Hall farm, in the parish of Ridge. By that description—a perfectly accurate one—there is property certainly known; but I am asked to decide that the testator, when he said 'in the parish of Ridge,' meant to include lands in another parish." And this, in my apprehension, is precisely what this court is now called upon to do in behalf of the plaintiff in error. This testator has said in clear language, that he gives all that farm which was conveyed to him by the heirs of his deceased wife, and we are asked to decide that he meant not only lands so derived, but also lands coming to him from another source. The judgment just cited was rested on the stable basis of the rule that where the first description of the subject of the devise is not so definite but that a subsequent specification may be harmonized with it, the rule of construction embodied in the maxim, "*falsa demonstratio non nocet*," is never applicable. Within the last two years, in the case of *Homer* v. *Homer*, *L. R.*, 8 *Ch. Div.* 768, Mr. Justice Fry asks the question, "Is there any case in which the doctrine of *falsa demonstratio* has been applied, where there were only general

words of description in the first instance?" And by general words is meant such terms as, according to the common use of language, can, without doing them violence, be made to stand in agreement with the rest of the descriptive phrases. For it is never to be forgotten that the maxim, "*falsa demonstratio non nocet*," is to be taken in connection with the restrictive maxim, "*non accipi debent verba in demonstrationem falsam quæ competunt in limitationem veram.*" So far as I have observed, all the decisions on this subject have their foundations in these two rules. Testamentary words have in no instance been discarded where, consistently with the context, they could be retained as words of limitation. It has been only in clear cases when they could not perform that office in which they have been discarded. I do not find that courts have surmised or guessed or speculated as to the probable intention of the testator, in such instances, in order to get rid of such restrictive phrases. In the case before referred to, of Homer *v.* Homer, the testator devised " all his lands situated at Stock Green aforesaid, then or late in the occupation of ———— Summers," to certain uses. It appeared that certain of the testator's land at Stock Green was in the occupation of one Josiah Green, and it was contended, as it is in this case, that it was the manifest intention of the testator to embrace in this devise the whole of the lands owned by him at the place mentioned. The argument was that the court would look for the testamentary purpose, and reject the words of limitation. " The contention," said the judge, in his opinion, " is this, that notwithstanding that the words limit the gift of the land at Stock Green to land in the occupation of Summers, they include the larger parcel of land there in the occupation of Green, and the case is argued on the footing that there is enough to satisfy me that the testator meant to give all his land at Stock Green, and that, therefore, the words expressive of occupation are *falsa demonstratio*, which may be neglected and rejected. I am of opinion that that is not the true construction. It seems to me that I am bound to give effect to every word contained in the description, as a

necessary part of the description, and that, so far as the gift
of lands at Stock Green is limited by the expression, 'in the
occupation of Summers,' I am bound to give effect to that
limitation." Further on, alluding to the supposed intention
of the testator, as indicated in the words in question, the
opinion says: "Such an intention is not insensible, and even
if improbable, is not irrational. It is a perfectly rational
gift, and one which the testator may well have intended to
make. That being so, I am not satisfied that there has been
any error. I may speculate, I may imagine, I may suppose
that there has been an error, but I have nothing from which
I can come to a judicial conclusion that there was an error in
describing the property as in the occupation of Summers. I
view these words, therefore, as words to which full effect is
to be given; they are applicable and competent as a true
limitation of the gift, and I confine the devise, therefore, to
so much of the land at Stock Green as was in the occupation
of Summers."

Another case of special significance, in this connection, is
that of *Morrell* v. *Fisher*, 4 *Exch.* 591. The facts were
these: The testator held certain farm lands situate at Head-
ington, under a lease from Magdalen College, Oxford. The
bulk of these lands was in the possession of one Burrows,
but there were two pieces of land so held under the col-
lege, that were in the occupation of another person. All
these lands taken together did not amount to one hundred
and seventy acres. The clause in the will that put the matter
in controversy was as follows, viz.: "All my leasehold, farm,
house, homestead, lands and tenements at Headington, con-
taining about one hundred and seventy acres, held under
Magdalen College, Oxford, and now in the possession of
Thomas Burrows, junior, as tenant to me." The question was
whether that part of the description that depended on the
possession of Thomas Burrows, was to be rejected, and the
argument was in the same line as that which has been
addressed to the court in the case now pending. It was urged
there was a devise of "all" the testator's "leasehold, farm,

house, homestead, lands amd tenements" " held under Mag-
dalen College," embraced in the first specified description, and
that the subsequent clause, restrictive of such description, and
which had the effect to throw out of it part of the lands
which it clearly embraced, was to be rejected as *falsa demon-
stratio*. But such was not the judicial view. After rejecting
the notion that the court could search extrinsically for the
testamentary intention, and saying that such considerations
" cannot affect our decision, as the question is not what the
testator intended to have done, but what the words of the
clause mean, after applying to it the established rules of con-
struction," the following was the cardinal rule upon which
the judgment was founded : " If, therefore"—such is the
language of the court—" there is some land wherein all the
demonstrations are true, and some wherein part are true and
part false, they shall be intended words of true limitation, to
pass only those lands wherein the circumstances are all true."
And the result was, that as all such demonstrations concurred
with respect to the lands in the possession of Burrows, and
did not concur with respect to the other tracts, such latter
tracts were declared not to be embraced in the devise. It is
too obvious to need words of comment to show that this rule,
applied to the present case, will have the effect of excluding
the premises in controversy from the operation of the testa-
mentary clause under consideration, for no one, it would seem,
can deny that all the demonstrations we find here embrace
only the farm which the testator derived from the heirs of
his wife.

Before turning from the case just referred to, it should be
further stated that, in the opinion in that case, the argument
that the first descriptive part of the clause of the will there
construed embraced "all the farm," was disposed of by a
reference to the fact that such words were not incongruous
with the subsequent words of limitation. The court said:
" But here there is a farm at Headington in the possession
of Burrows ; and that description being true with respect to
the farm, cannot be rejected." And so in the present case,

there is a farm which was derived from the heirs of the testator's wife, and, most plainly, if the reported case rests on a legal foundation, these words of limitation cannot be rejected.

I shall close my reference to this case in the Exchequer, with the remark that it also presents another similarity to the case now under consideration, consisting of a description, in the will, of the lands devised, by the number of acres. The number thus stated was greater than the acreage of all the lands in question, so that, if the circumstance had any legal force, it pointed against the conclusion reached by the court. But so uncertain a test of testamentary intention was not even pressed, although mentioned, by the counsel in the argument, and from the silence of the court upon the subject, and in view of the unreliability of such an indication, it is rational to presume that it was not deemed to be worth so much as a single comment.

Also, I think the case of *Doe* v. *Lyford*, 4 *M. & S.* 550, is, because of its appositeness, of moment in this inquiry. The testator was seized of a farm which had come to him from one Lovibond, consisting of contiguous closes, and which had for a long time been put out to a tenant as a single tract. The principal part of this farm, and that part upon which the buildings were erected, was situated in the hamlet of Sutton Wick, but a certain portion of it extended over into another hamlet, and the question was whether this last-mentioned portion was contained in the following testamentary disposition, viz.: The testator devised "all that his messuage or tenement, farm, lands, and premises, with the appurtenances, situate, lying, and being at Sutton Wick, in the parish of Sutton Courtney, which he lately purchased of and from Lovibond, to hold," &c. At the trial of this cause, an offer had been made to show that the testator, in a notice to quit served upon his tenant, had described the whole of this farm as situated "at Sutton Wick, in the parish of Sutton Courtney.". It is to be noted how much stronger this case was, touching the point under consideration, than the case now

pending, for if the devise was limited by the local demonstration, there was not an entire farm to pass under the devise. But, notwithstanding this feature, and although, according to the first part of the description, the premises were described in the general description, the court refused to throw away any portion of the descriptive marks. Lord Ellenborough, in a few plain sentences, expresses his views. He says: "But here the will is fully operative to pass the lands at Sutton Wick, and there is nothing in the description of them from which any ambiguity is raised as to the property; for if you look at the words, 'which he purchased of Lovibond,' the devisor had lands answering that description, and also the other description, if you look to the words, 'situate at Sutton Wick.' So that there is not any occasion to refer to extrinsic evidence, in order to give this will effect. If there is no latent ambiguity, I cannot see any necessity to look beyond the terms of the will, in order to give it a wider range. The argument of inconvenience arising from the separation of the estate, would lead into much too wide a field. This is a devise of his lands at *Sutton Wick*, and at *Sutton Wick* only, which were purchased of Lovibond, not of all his lands which were purchased of Lovibond, but of all at *Sutton Wick* which were purchased of *Lovibond*."

Moreover, this authority is important in another aspect, as it explodes the argument which was so much urged on the present occasion, derived from the circumstance that the first description in the will, now to be construed, calls for a "farm," it being said that such term denotes an entire thing, and has a quite definite signification. When I use the term "explode," of course I mean by the expression that the argument referred to was decisively rejected by one of the ablest courts that ever sat in any of the courts at Westminster. With respect to this point, Mr. Justice Bayley, in his opinion in the case just cited, thus deals with the subject: "The testator having land in Sutton Wick, in the parish of Sutton Courtney, which he purchased of Lovibond, how should we be warranted in saying that he intended to pass

lands not in *Sutton Wick*, but in Sutton Courtney, in the parish of Sutton Courtney? We may conjecture that such was his intention, but it would be only conjecture. Perhaps the only word that leads to this conclusion is the word "farm," which, as it relates to an entire subject, may be said to require the whole property, besides that which lies in Sutton Wick, to compose it, and therefore the devise must be carried beyond Sutton Wick. But the word is of such indefinite meaning that I cannot be positive that the testator, by using it, meant to pass the whole. It is unnecessary to go through the authorities, the general rule being agreed, that we ought not to reject any words which are capable of taking effect, that is, provided there be property to satisfy the entire description in the will."

This certainly is a strong case, illustrative of the value ascribed in judicial opinion to the rule in question. The property devised was a farm derived from a particular person, and yet the court thought only part of the farm and only part of the lands so derived was devised, because it was only such part that lay in the designated hamlet. Here the *ratio decidendi* is plain. It was the rule that when all the demonstrations could be rationally applied, none of them could be discarded. The testator's description was not permitted to be mutilated, on the specious argument that the term "farm" denoted totality, and that it was this whole farm that was derived from Lovibond that was meant, the view taken being that the description founded on locality modified the force of these demonstrations, and that the cardinal principles of construction demanded that all such demonstrative terms should be retained. I again repeat that, in the present case, there is not even that semblance of incongruity between the different branches of the description to which I have just alluded, in the reported case, because we have here, as the subject of the whole demonstration, an entire farm, to wit, that derived from the heirs of the testator's wife, and it was upon that farm that Thomas, the son, resided at the date of the will, unless we adopt the theory that Thomas ceased to reside, in the usual

sense of the term, on such farm, because fourteen acres of open land were subsequently added to it.

I think these cases were correctly decided, and that the foundation on which they rest is thoroughly established. To my mind, they all teach the important lesson that, in the opinion of these great judges, it is, in view of the public interest, no light thing to expunge from a will, unless upon well-nigh incontestable grounds, any part of the language of the testator. To justify the suppression of a single descriptive term, such term must not only be out of exact harmony with other parts of the demonstration, but it must be undeniably so in some important respect, after putting a reasonable construction on the entire descriptive context, and the judicial leaning should be to the retention of every word. Unless this be the rule, uniformly enforced, confusion will take the place of legal regulation, for there are comparatively few testamentary descriptions, consisting of several items, in which all the parts so exactly accord, that it is not possible for ingenuity to point to differences. So far as I am concerned, I am unwilling to remove the ancient landmarks, in this department of the law.

Before closing the subject, it is proper to refer to the other parts of the testamentary clause that are claimed to be matters of description. All the items of description are four in number, viz., first, " all that my farm and plantation near Cropwell." I have already said this phrase, with perfect fitness, will apply to the object embraced in the subsequent limitation, as the lands which the testator had derived from the heirs of his deceased wife, composed " a farm," and therefore entirety was predicable of the gift. I have been unable to see how it is reasonable to say that the expression, " all that my farm near Cropwell, conveyed to me by the heirs of my deceased wife," is not, in every respect, concordant and definite.

The second descriptive part of the clause is the phrase, " conveyed to me by the heirs of my deceased wife." This subject has already been fully discussed.

The third article of description is the words, "and where my son Thomas now resides." At the time the testator acquired the lands from the heirs of his wife, Thomas lived upon that farm, and in the conveyance to the testator, the tract is described by that circumstance. The dwelling-house and buildings were then, and continued to be, upon such tract. Certainly, by the addition of the fourteen-acre tract, Thomas did not cease to reside upon this farm. This branch of the description, therefore, does not, as it appears to me, in any degree whatever, conflict with the restrictive phrase in question.

The last item of description is the expression, "containing about eighty-five acres, more or less." This indication was not much relied on at the argument, and I think very properly so. This quantity, thus designated, does not accord with the actual acreage, when the fourteen acres are either added or subtracted. But even if such accord existed, it would afford no ground upon which to rest a construction whereby a part of this testamentary clause is to be expunged. The expressions, too, in this will, "about" so many acres, "more or less," present an uncertain standard, in the most uncertain of forms. I have seen no decision in which the quantity of acres given in the will has been permitted to control or modify, much less to expunge, any part of the verbal description. We have already seen that in the case of Morrell v. Fisher, the circumstance was considered of no moment, and in *Whitfield* v. *Langdale*, *L. R.*, 1 *Ch. Div.* 76, a farm of one hundred and seventy-five acres was held to pass, although the tract devised was described as containing only eighty acres. In the present case, under the circumstances, no force whatever seems due to this branch of the description.

With respect to the general contents of this will, it appears to me that all parts of them favor the view above indicated. The testator, when he made this will, was the owner of four tracts of land, besides the one embraced in this controversy, and in devising such four tracts, he describes each of them by

its name. Thus, he gives to his son, Samuel B. Evens, all that tract, &c., "called the Stokes farm;" to William B. Evens, "all that my homestead farm;" to Jacob Evens, all that farm, &c., "called the Jacob Evens farm," and to his three sons, all the lands "called the saw-mill tract." And it is only in the single instance now in question in which this mode of definite description is departed from, and a mode of designation adopted in which the first descriptive character-istic which is given is susceptible of subsequent modification. In addition to this feature, we have the further circumstance that there is a residuary clause embracing land, and that there is nothing on which such branch of it can operate, unless the fourteen-acre tract is excepted out of the devise in question. This residuum is given to the testator's four sons, who were also the devisees of his several farms, and as there were marl-beds on the fourteen-acre tract, it certainly would not be to ascribe an irrational or improbable intent to the testator, to suppose that he meant that such latter tract should be held by them in equal shares in common.

But in reaching my own conclusion, I do not rely, in any degree, on these special testamentary features, but singly on the established rule of construction already stated and expounded, and it is upon that ground that I shall vote to affirm the judgment.

VAN SYCKEL, J. (dissenting.) Thomas Evens, Sr., was seized, at the time of his death, of a farm near Cropwell, in the counties of Camden and Burlington, containing eighty-seven acres of land.

Seventy-two acres of this land he held as tenant by the curtesy in 1822, and then purchased an adjoining field, con-taining fourteen acres, which he annexed to the larger parcel, and rented the whole as one farm, to a tenant.

Since that date, the two tracts have been occupied and used as one farm. In 1859, Thomas Evens, Sr., purchased the fee of the seventy-two-acre tract from the heirs of his deceased

wife, since which time the whole of the eighty-seven acres have been held, used, and occupied as one farm.

By his will, dated in 1867, he devised to trustees, for the use of his son, Thomas Evens—" All that my farm and plantation near Cropwell, conveyed to me by the heirs of my deceased wife, and where my son, Thomas Evens, now resides, containing about eighty-five acres, more or less."

Thomas Evens, the son, went upon the farm as tenant of his father, in 1850, and resided thereon, and occupied the whole, including the fourteen-acre lot, as one farm, from 1850 until the death of the testator, in 1869.

The question is, whether the whole farm near Cropwell passed by this devise, or only that part of it containing seventy-two acres.

In *Whitfield* v. *Langdale*, L. R., 1 *Ch. Div.* 73, Vice-Chancellor Bacon says : " Many cases have occurred in which the principles applicable to construction of wills, involving questions of a kind similar to those which arise in this case, have been considered. The difficulty and nicety of such questions have at all times been felt. Some of the most important of the cases have been referred to in the course of the argument, and although particular expressions in other wills— which are never exactly similar to those in which subsequent questions have presented themselves—cannot be relied on as furnishing an infallible guide for the solution of further questions, yet rules have been laid down which the courts have at all times regarded as authoritative."

A careful examination of the numerous cases upon this subject will show that the following are the conceded rules of interpretation :

If there be an adequate and sufficient description, with convenient certainty of what was meant to pass, a subsequent erroneous addition will not vitiate it. " *Falsa demonstratio non nocet.*" But if there is some land wherein all the demonstrations are true, and some wherein part are true and part false, they shall be intended words of true limitation, to pass only those lands wherein the circumstances are true.

The distinction is between those cases in which there has been a complete description of the thing given, and a subsequent misdescription as to some particular connected with it, and cases in which that which is subsequently connected with the description is so connected as to form part of the description of the thing given. In the latter case, the words will limit the devise.

Where there is a complete description, and the testator goes on to add words, for the purpose of identification, these words, if inconsistent with the previous description, may be rejected.

And where there is one continuous description, and there is something answering to part of it, and something to another part, but the two together are inconsistent, the question is, which are the leading words of the description?

In the language of the opinion of the court below, "Where the description consists of several particulars, of different degrees of importance, that subject matter will be selected to which those particulars apply which are superior in number and importance, rather than that which corresponds with those of a lesser number or of minor consequence."

These rules, by reason of their antiquity, and of the observance which has been so universally accorded to them by every judicial tribunal before which they have been discussed, must now be regarded as beyond controversy.

In applying these, as all other rules of interpretation, we must not forget the fundamental doctrine that their sole purpose is to effectuate the intention of the testator. They are intended to be used as a means of searching out and declaring that intention.

The intention of the testator in this, as in every other case, must be drawn from the language used in the will, viewed in the light which the situation and circumstances connected with the property, may shed upon it.

Resort cannot be had to any parol declarations of intention made by the testator.

The contention, therefore, in this case, arises not as to what the canons of construction are, but as to what result must be reached from their application to the peculiar words of this devise, in view of the facts which have been stated.

In *Goodtitle* v. *Southern,* 1 *M. & S.* 299, the testator devised "all that my farm called Trogues farm, now in the occupation of A. C."

It turned out that there were two closes of land constituting part of the "Trogues farm," which were not in the occupation of A. C., and the question was whether they passed. The jury having found that they were part of the "Trogues farm," the court held that they passed, because that which was given was clearly the "Trogues farm." There was no doubt it was the "Trogues farm" which was devised by the will. It was wrong to say that the whole was in the occupation of A. C., but the circumstance that the testator had made a mistake in supposing that the whole was in the occupation of A. C., did not cut down the gift.

The authority of this case has been too generally acquiesced in to be now questioned.

In a number of subsequent cases, the distinction has been drawn, that if the devise had been of "my farm at Trogues, now in the occupation of A. C.," then only that portion which was in the occupation of A. C. would have passed.

Admitting the correctness of this distinction, to my mind the words, "all that my farm and plantation near Cropwell, where my son, Thomas Evens, now resides, containing eighty-five acres, more or less," more clearly indicate that it was the purpose of the testator to give the whole farm, than if he had said, "all my Cropwell farm," without adding the words, "and where my son Thomas now resides, containing eighty-five acres, more or less." If so, if the subject matter of the devise is accurately defined, the other words of description, under the rules stated, cannot diminish the testator's bounty.

Any presumption of an intention to restrict, by reference

to the derivation of title, is repelled by the two subsequent parts of the description.

It may be safely said that no case can be adduced in which words have prevailed as being restrictive, where they have been accompanied, as in the case under discussion, by two clauses so comprehensive as to embrace an entire subject, fitly described by the first words of the devise.

Had the testator in his mind the whole farm, or only part of it? He gives "all that my farm and plantation near Cropwell." It was all in the possession of Thomas, and had been for many years. It had long been regarded as a unit— as one farm—and it contained about eighty-five acres. The reference to the title was a subsequent misdescription as to some particular connected with it, as the reference to the occupancy of the Trogues farm was a mistake, which did not conceal the intention of the testator, and rightly was not permitted to thwart it. For twenty years next prior to his death, the testator had permitted his son Thomas to occupy this farm as an entirety, and·I am unable to see that the language in which he has declared his last wishes, manifests any intention on his part that the farm should be dismembered after his death.

Suppose, in this case, the house occupied by Thomas had been upon the fourteen acres, and that had been the tract conveyed to the testator by the heirs of his deceased wife, would that parcel alone, to the exclusion of the seventy-two acres, have vested in the devisee? Under the construction made below, I can see no escape from an affirmative answer to this question.

The violence which would be done to the testator's intention, in the supposed case, would be more striking, but the misapplication of rules of interpretation would be equally clear, because, in both instances, the last two clauses of the description would be substantially rejected.

In *Slingsby* v. *Grainger*, 7 *H. L. Cas.* 273, the words were: " I leave the whole of my fortune, now standing in the funds, to E. S." It was properly held that the word " funds " was

a technical term, which did not include bank stock, and that the legatee took only what stood in the funds.   But the judges in that case said that if the bequest had been, "I leave the whole of my fortune to E. S., which fortune now stands in the funds," the latter words would be *falsa demonstratio,* and would not curtail the generality of the gift.

*Doe* v. *Tyrrell,* 4 *M. & S.* 550, is not against the claim of the devisee in this case.   There the testator devised to James Langford "all that his messuage or tenement, farm, lands and premises, with the appurtenances, lying, situate, and being at Sutton Wick, in the parish of Sutton Courtney, which he lately purchased of and from Lovibond."

The devisee claimed lands of which the testator died seized, which were out of Sutton Wick, and in Sutton Courtney, on the ground that the lands were all conveyed to the testator by Lovibond.

The contention arose upon an offer to prove, by parol, that the testator, in his lifetime, treated the whole estate as lying in Sutton Wick.   The court rejected the evidence, on the ground that the testator had lands answering to the entire description—that is, lands at Sutton Wick, which he purchased of Lovibond—and that, therefore, there was nothing in the description from which ambiguity arose.   But if there had been anything in the language of the will to indicate that he had, in his lifetime, always treated all the lands as lying at Sutton Wick, a different result would have been reached.

The distinction between that case and this is, that here the words following the alleged restriction do show that something more was intended to pass than was conveyed to the testator by the heirs of his deceased wife.

Chief Justice Erle states the rule with accuracy, in *Webber* v. *Stanley,* 16 *C. B.* (*N. S.*) 698; 111 *E. C. L.* 751:

"For the purpose of construing the will, the court must be informed of the circumstances surrounding the testatrix when she made her will, such as her family *status* and the nature of her property.   When these extrinsic facts have been ascer-

tained, the operation of construction must be performed by the court. As to the case where there is property in respect of which all the facts of the description are found to be true, so that the property exactly fits the description, the whole of that property passes, and nothing more. As to the case where there is property in respect of which none of the facts of the description are true, no property passes. Where there is property in respect of which some of the facts of the description are true and some not, there the court must inquire whether the part of the description which applies to the property is a complete definition of a subject of devise, so that the misdescribing part may be justly regarded as a mistake."

It is apparent that it is impossible to apply the description in the case in hand to the seventy-two acres alone, without rejecting some of the language. The seventy-two acres do not constitute "all that my farm where my son Thomas resides," nor do they embrace "all that my farm near Cropwell, containing eighty-five acres, more or less." All the words cannot have full effect, and in this condition of things, Lord Selborne, in *Hardwick* v. *Hardwick*, *L. R.*, 16 *Eq. Cas.* 175, clearly expresses the established rule which must guide the court. He there says: "If the words of description, when examined, do not fit with accuracy, and if there must be some modification of some part of them, in order to place a sensible construction on the will, then the whole thing must be looked at fairly, in order to see what are the leading words of description, and what is the subordinate matter, and for this purpose, evidence of extrinsic facts may be regarded."

Every part of the testator's description must be given effect, if possible. In the court below, the description by acreage was entirely rejected. There is no case which holds that it is so unimportant that it may in all cases be discarded. Its value as a guide depends upon the circumstances of each particular case, upon the other members of the description, and the extrinsic facts which may properly be admitted as

aids to interpretation. In some cases it may be of no importance, in others it may have much force as an indication of the testator's will.

In *Morell* v. *Fisher*, 4 *Exch.* 591, the language of the will was, "All my leasehold farm-house, homestead, lands and tenements at Headington, containing one hundred and seventy acres, held under Magdalen College, Oxford, and now in the occupation of Thomas Burrows, Junior, as tenant to me."

Two pieces of land, together containing about twelve acres, held by the testator under Magdalen College, were excepted out of the devise by the testator, in his lifetime, to Thomas Burrows, and never were in the occupation of said Thomas. The question was whether these two parcels of land passed by this devise.

That acreage may be a matter of importance, was evinced by the fact that the first question which Baron Rolfe asked of counsel who argued the case, was, "What is the quantity, including those two parcels of land?" The answer was that, including both parcels, there were not near one hundred and seventy acres, and therefore Baron Alderson, in delivering the opinion of the court, truly said, "The description by acreage defines nothing, for it is inapplicable to any subject, and therefore that may be rejected, and then there is nothing to define any lands in particular." It was manifest that the testator had no knowledge whatever as to the quantity of land held by him under Magdalen College, and therefore his reference to acreage did not furnish the slightest intimation of what he intended by the devise.

In the case in hand, the reverse is true. If, in that case, the property claimed under the devise had, with the two disputed parcels, contained one hundred and seventy acres, and without them, contained only one hundred and forty-five acres, the court could not have rejected the description by acreage as inapplicable to the subject. But even if there had been one hundred and seventy acres of land in that case, including the two parcels not occupied by Burrows, that case would not

have been so strong for the devisee under the will as is this case, for it is not quite clear that the words, "all his leasehold farm-house, homestead, lands and tenements at Headington, held under Magdalen College, Oxford," embraced all lands at Headington held under the college. It might, without any violence to the terms used, have been held to mean those lands then held by him in connection with his leasehold farm-house, which were precisely those occupied by Burrows. In this case, it is conceded that the words, "all my farm and plantation near Cropwell," would, by themselves, carry the whole farm of eighty-seven acres.

In Whitfield v. Langdale, before cited, the testatrix devised "all that and those messuage or tenement, houses, buildings, farm and lands called H., situate in the parish of L., containing, by estimation, eighty acres, more or less, now in the occupation of J. C., or his assigns."

At the date of the will, a farm called H. was in the occupation of J. C. It contained nearly one hundred and seventy-five acres, and was partly in the parish of L. and partly in an adjoining parish.

The court held that the testatrix having accurately described the subject matter of the gift by the words, "all my farm called H., now in the occupation of J. C.," did not, by reference to the acreage and location, diminish the effect of the description she had thus given of the subject of her intended devise, which was a compact estate, and it was therefore decreed that the whole of the lands passed. These two members of the description prevailed over the other two. In the case under review, a single member, of no more importance than the rejected one in that case, has been allowed to prevail over the other three.

The two cases last referred to illustrate the great weight which is given to description by occupancy.

Neither case furnishes any justification for the rejection of the description by acreage, in the case now pending.

A comparison of the cases, Morrell v. Fisher and Griscom

*v.* Evens, will be instructive. The marked differences between them cannot escape the most casual observation.

In the former, the lands in dispute had, in the testator's lifetime, been severed from the premises connected with "his leasehold farm-house," and had been added by him to another farm, of which it remained a part to the time of his decease.

In this case, on the contrary, the fourteen-acre tract, from the time of its purchase by the testator, in 1822, to the time of his death, in 1869, had been annexed to, and held and treated by the testator as part and parcel of his farm near Cropwell.

In the former case, the primary words of the devise, "all my leasehold farm-house, homestead, lands and tenements at Headington, held under Magdalen College, Oxford," standing by themselves, would not leave it free from doubt whether any lands passed which were dissevered from the leasehold farm-house.

In this case, the words, "all that my farm and plantation near Cropwell," would not be satisfied if a single acre was severed from it.

In the former case, the description by acreage was not an approximate description of either the whole or part of the premises. Here the description by acreage is applicable to the whole farm, and is inapplicable to part of it.

In the former case, the occupation of Thomas Burrows was limited to part of the premises.

In the latter, the occupation of Thomas Evens was of the whole farm—of the fourteen as well as of the seventy-two acres.

There must be a misapplication of legal principles, when the same result is reached in these two cases, so strikingly dissimilar.

In the case under review, the description of the premises is specific and ample:

1. All that my farm and plantation near Cropwell.

2. Conveyed to me by the heirs of my deceased wife.

3. And where my son Thomas now resides.    "Where," in this connection, being equivalent to " whereon."

4. Containing about eighty-five acres, more or less.

Three of these clauses import a description of the entire body of the subject devised, and the fourth declares whence the title came to the testator.

Two interpretations are suggested, between which an election must be made.

The first is to reject the reference to acreage absolutely, and then apply the description to the seventy-two-acre tract, on the ground that the testator had a tract of seventy-two acres near Cropwell, which was conveyed to him by the heirs of his deceased wife, on which Thomas resided.    But even then, the seventy-two-acre tract would not fully satisfy the description, for it would not be all that farm whereon Thomas resided; it would be all the tract so conveyed to the testator, but part only of all the farm whereon Thomas resided. Thomas undoubtedly resided on the seventy-two acres, but the farm whereon he resided was something more than the seventy-two acres; it was the whole eighty-seven acres.

A construction can be adopted which will more fully give effect to all the words of the devise.

The description by acreage harmonizes with two other leading parts of the description, and it ought not, under conceded rules of interpretation, to be wholly disregarded.

This is a case where every word of the description does not fit with accuracy, where there must be some modification of part of it, and therefore, as Lord Selborne says, in Hardwick v. Hardwick, the whole thing must be looked at fairly, to arrive at the intention of the testator.

The question is not what you can make out of the words of the devise, if you first reject a part of them, but what, looking fairly at all the words as they stand on the face of the will, is the court to say the testator's intention was, under the admitted rules of construction?

The devise contains a quadruple description of the thing devised, and that one thing is the farm near Cropwell.

It was proven, incontestably, that that farm, in the testator's lifetime, was held and treated as an entirety, containing eighty-seven acres.

The first description is, " all my farm near Cropwell," not part of it.  It clearly includes both tracts, for together they constituted that farm, and either parcel, without the other, constituted part only of the farm.

" All that my farm where Thomas resides " is the whole farm, and not part of it.  He was in possession of it as an entirety—as a farm—and, accurately speaking, the farm on which he resided was composed of the two parcels.

The farm devised was declared to contain eighty-five acres, more or less, not seventy-two acres.  This description is applicable to and true of the whole farm, and inapplicable to the seventy-two acres.  He devised the whole eighty-five acres, not part of them.

Acreage here is significant; it points the direction the testator's mind was taking.  The farm contained a fraction over eighty-seven acres.  In speaking of it, the owner would naturally say, " it contains about eighty-five acres."

These three members of the description describe the farm itself; the other member tells how he obtained it.

It was true as to the mode in which he acquired title as to part, but not true as to the other part.  The tract conveyed to him by the heirs of his deceased wife was something less than all the farm at Cropwell.

The three accurate descriptions of the farm, which, if standing by themselves, would unquestionably carry the entire farm, ought to control the inaccurate recital of the testator's title to it.  He devised in his will several farms, and he evidently meant, by reference to the title, to designate the location of the farm with more particularity, and not to limit the devise to that part of the farm only which was described in the conveyance from the heirs of his deceased wife.

The will may be read, " all that my farm and plantation near Cropwell, conveyed to me by the heirs of my deceased wife, and all that my farm and plantation near Cropwell,

State, Freeholders of Hudson, pros., v. Road Commissioners.

where my son, Thomas Evens, now resides, containing about eighty-five acres, more or less."

Applying the devise to the whole farm, it satisfies the former as well as the latter description. It carries all that farm near Cropwell, conveyed to the testator by the heirs of his deceased wife, and also all that farm whereon Thomas resided, and thus gives effect to every word of the devise.

The testator united these two tracts of land, and held them together as one farm for almost half a century next preceding his death, and when, in his lifetime, he spoke of this farm, we can make no mistake in asserting that he referred to the whole, and not to part of it.

I am so fully persuaded that the judgment below defeats the testator's expressed intention, that I cannot vote to affirm it.

*For affirmance*—THE CHIEF JUSTICE, DEPUE, KNAPP, PARKER, SCUDDER, DODD, GREEN—7.

*For reversal*—THE CHANCELLOR, DIXON, REED, MAGIE, VAN SYCKEL—5.