30 N.J. Super. 242 (1954)
104 A.2d 71
JULIUS J. GOLDEN, EXECUTOR UNDER THE WILL OF ANGELICA CELLA, DECEASED, PLAINTIFF-RESPONDENT,
v.
CASA PER SACERDOTI VECCHI ED INVALIDI, AND HIS HOLINESS POPE PIUS XII, DEFENDANTS-RESPONDENTS, AND UMBERTO DeGANO, HUGO DeGANO, OSCAR DeGANO AND MARGARET DeGANO, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 8, 1954.
Decided March 24, 1954.
*243 Before Judges EASTWOOD, JAYNE and CLAPP.
Messrs. Maurice A. Potter and Sidney Alpern argued the cause for defendants-appellants (Mr. Peter N. Perretti, Mr. Alpern and Messrs. Potter and Fisher, attorneys).
Mr. John J. Rafferty argued the cause for defendants-respondents.
The opinion of the court was delivered by CLAPP, S.J.A.D.
By this action, the executor under the will of Angelica Cella laid before the court for construction and instructions, the residuary paragraph of her will, reading thus:
"I give, devise and bequeath all of the rest, residue and remainder of my estate, whether real, personal or mixed, wheresoever situate, whereof I may die seized or possessed to such Catholic Home for the Aged in the Town of Uldine in Finili, Italy, as selected by the Pope, to have and to hold the same to its own use forever."
*244 The parties stipulate that testatrix meant thereby to make reference to the Town of Udine in Friuli, Italy. In that town there is a Catholic home for old and invalided priests, and the Pope selected it. The selection was sustained by the trial court, and the heirs and next of kin appeal.
We have here a single constructional question. What was it testatrix meant by the words "such Catholic Home for the Aged"? Appellants take the position that since "aged" signifies "aged people," testatrix, therefore, meant to confine the gift to that kind of Catholic home in Udine which is "dedicated to the care of old persons of all walks of life"; this, so appellants say, was the class of homes from which the selection was to be made. There is no such home in that town, indeed no Catholic home for the aged of any sort other than the home for the priests above spoken of. In pursuance of their argument, appellants are obliged to say that the Pope's power of appointment was so curcumscribed he could not have selected, let us say, a Catholic home for aged farmers, had there been such a home in Udine. However, we think the language of the will, taking it in its natural import, does not admit of the construction contended for. There are no words of restriction in the clause, and it seems to us that by the very force of its terms, the will has reference to any Catholic home for the aged, comprehending therefore not only a home for aged men and women of every sort, but as well a home for aged women, a home for aged mechanics and a home for aged priests.
Appellants seek to support their position by proof of what testatrix had to say to the scrivener when she gave him instructions for the will. According to that proof, she wanted her residuary estate to go "to a Catholic home for the old people in her old home village or town"  or, as stated at another point, to limit the gift to the old people "from her home village Pozzuolo and Udine." Further, so these instructions went, she certainly  "oh definitely"  desired to benefit not "any specific group of aged persons such as old doctors or priests," but "old people * * * without limitation." *245 Counsel for the Pope and the home for the priests say that this testimony is inadmissible.
The principles involved here were comprehensively laid out in the recent opinion of In re Armour's Estate, 11 N.J. 257 (1953). The law  both the statute of wills (N.J.S. 3A:3-2) and the parol evidence rule  forbids any proof of extrinsic utterances of a testator stating what he intends, or had intended, to provide by his will. In re Armour, supra, 9 Wigmore on Evidence (3rd ed.), § 2471; Thayer, Preliminary Treatise on Evidence, 396, 444, 482 (1898)  an "epoch-making" work (Hughes v. Atlantic City & S.R.R. Co., 85 N.J.L. 212, 216 (E. & A. 1914)). "Direct statements of intention," Thayer (see supra, e.g., 440) called them for short. Statements of the testator, not of the forbidden sort, are sometimes designated as "oblique" (Warren, Interpretation of Wills, 49 Harv. L. Rev. 689, 708 (1936)); it may be clarifying to add, by way of example, that they include declarations showing an habitual usage, in a nontestamentary connection, of words found in the will. Wigmore, supra, § 2467, 2471 (first paragraph).
To this general rule holding direct statements of intention inadmissible, there is at least one recognized exception, namely, "where there are two or more persons or things, each answering exactly to the person or thing described in the will." Griscom v. Evens, 40 N.J.L. 402, 407 (Sup. Ct. 1878), affirmed 42 N.J.L. 579 (E. & A. 1880); see In re Armour's Estate, 11 N.J. 257, 280 (1953), supra (the first class of latent ambiguities). Cairns, as Lord Chancellor, stated this (as did Thayer, supra, p. 482) to be the only exception, namely (as Cairns phrased it), where the description is "equally applicable in all its parts" to more than one person or thing. Charter v. Charter, L.R. 7 E. & I. App. 364, 377 (House of Lords 1874). We are not called upon here to consider the validity of the distinction often taken between a patent and latent ambiguity (Thayer, supra, p. 424; Wigmore, supra, § 2472-3), first stated in Bacon's Maxim XXV (numbered XXIII in some editions) which, however, was designed as a rule, not of evidence, but of *246 pleading (Thayer, supra, p. 425, 472); nor need we pass upon the effect of a blank space in a will or upon cases of a quite similar sort (Wigmore, supra, § 2473; see Clayton v. Lord Nugent, 13 M. & W. 200, 153 Eng. Rep. 83 (1844), commented on in Wigmore, § 2467).
Wigmore argues for a second exception to the general rule above stated, and gives some countenance to a third exception. The second exception is said to arise where (as Professor Warren puts it) a description applies "equally but not precisely to two or more" persons or things (Commercial Trust Co. v. Heintz, 98 N.J. Eq. 15 (Ch. 1925), affirmed 99 N.J. Eq. 411 (E. & A. 1925)), or, at any event, where a description applies in part to two or more objects (cf. Van Nostrand v. Board of Domestic Missions of Reformed Church in America, 59 N.J. Eq. 19, 22 (Ch. 1899)). Wigmore, supra, § 2472; Warren, supra, p. 711; see Thayer, supra, p. 479.
The third exception stands in an aura of dicta and doubt, opening the door still wider to let in direct statements of intention in the case of any misdescription. This exception may be said to arise where the words cannot apply but to one object, but they do not even apply to it accurately; or where (as stated in Hand v. Hoffman, 8 N.J.L. 71 (Sup. Ct. 1825)), the application of words to extraneous things "is found impracticable." We need not consider here those equivocations and uncertainties in language which cannot be termed descriptions of persons or things (Warren, supra, p. 712).
This third exception comprises the second class of latent ambiguities, as stated in Miller v. Travers, 8 Bing. 244, 131 Eng. Rep. 395 (Ct. C.P. 1832), quoted at length in Wigmore, supra, § 2474 (on the other hand Wigmore can be cited as being against this third exception. See § 2476 (2)) and in part in In re Armour's Estate, supra, at p. 280. But Miller v. Travers (and the same is true as to Hand v. Hoffman, supra) did not, as Thayer, supra, p. 480, has pointed out, discriminate between direct statements of intention (involving the important policies underlying the statute of wills and the parol evidence rule) and other extrinsic evidence, *247 including oblique statements and proof of surrounding circumstances, which in the present century is not regarded with the disfavor in which it once was held (the history of the law as to extrinsic evidence, other than direct statements of intention, is stated in Wigmore, supra, § 2470, more concisely than in Thayer).
The declarations of testatrix to the scrivener here, consisting, as they plainly do, of direct statements of intention, are banned by the general rule, unless they can be made to fall within some exception to the rule. To that end we have endeavored to lay out in a comprehensive fashion all exceptions for which there is some authority. Plainly, neither the first exception, nor the second is pertinent here; it is not suggested that the words of the will here apply to two or more objects even in part. Nor is the third exception pertinent; as we have said, we think the words here are applicable "in all their parts" (to use Lord Cairns' words) to the home for aged and invalided priests. So, without passing on the validity of any exception suggested, we conclude that the testimony stated is inadmissible. In re Armour's Estate, 11 N.J. 257, 280 (1953), supra.
The question as to the admissibility of this testimony is discussed in the briefs; but the circumstance that no objection was taken below as to the matter of admissibility is passed by counsel, and hence we shall do likewise. See further R.R. 1:5-3(c); also see R. Krevolin & Co. v. Brown, 20 N.J. Super. 85, 92 (App. Div. 1952).
It is said that in the home appointed by the Pope to take under the will, young invalided priests as well as old priests might be admitted. What difference this would make we need not decide, for the proofs indicate the contrary. The only basis for the assertion is to be found in a translation of some stories from Italian newspapers in 1937 received in evidence, stating the purposes for which the home was intended when it was opened then. The proof as to the matter appearing in a document dated 1953 is much more cogent; thereby it appears that "the exclusive purpose [of the home] is to shelter priests who are old and invalided." In our *248 view, this establishes, so far as the record goes, that only old priests who are invalided would be admitted to the home.
The appointment, we find, was made to a home embraced within the terms of the will. We therefore need not deal with the cy pres doctrine.
Affirmed.